UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUTHER D. GONZALES-HALL,

    Plaintiff,

v.                                                                            Case No. 20-12912

CITY OF DEARBORN, *et al.*,                               Honorable Nancy G. Edmunds

    Defendants.

_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [34]**

This civil rights lawsuit filed pursuant to 42 U.S.C. § 1983 arises out of an encounter between Plaintiff Luther D. Gonzales-Hall and a number of Dearborn police officers. Plaintiff brings unlawful arrest, excessive force, and deliberate indifference claims against Defendant Officers Marvin Sanders, Aaron Najor, Peter Hoye, and Steven Vert (collectively, "Defendants").[1] The matter is before the Court on Defendants' motion for summary judgment.[2] (ECF No. 34.) The motion is fully briefed. (ECF Nos. 40, 42, 44.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motion will be decided on the briefs and without oral argument. For the reasons below, the Court DENIES IN PART AND GRANTS IN PART Defendants' motion for summary judgment.

---

[1] Plaintiff also brought state law claims in his complaint, but the Court declined to exercise supplemental jurisdiction over those claims and dismissed them without prejudice. (ECF No. 4.)

[2] Plaintiff also named John Does 1-3 in his complaint, but they have not been identified. Also, two additional defendants, the City of Dearborn and Officer Adam Walker, have appeared and are parties to the present motion, but Plaintiff stipulates to dismiss these defendants, (ECF No. 40, PageID.1434), so the Court need not address the arguments that only relate to the claims brought against them.

1

I. **Background**

On November 17, 2018, Plaintiff was on his bicycle after leaving a friend's house and was trying to get home in the area of Telegraph and Oxford in the city of Dearborn. He was disoriented and lost when he saw Defendant Sanders in a marked police car. Plaintiff waived Defendant Sanders down to ask for directions. Defendant Sanders gave him directions and as he was doing so, he noticed that Plaintiff's speech was slurred and suspected that he was intoxicated. (ECF No. 34-2, PageID.277.) According to Plaintiff, Defendant Sanders was rude to him, so he rode his bike to a nearby White Castle to ask for directions. (ECF No. 34-3, PageID.312-13.) Defendant Sanders followed him into the restaurant.

As depicted in footage from the body camera worn by Defendant Sanders, he asked Plaintiff why he was asking for directions after he had already given them to him. Plaintiff explained that he still was not sure where he was going. After some back and forth, Plaintiff attempted to leave the restaurant. Defendant Sanders told him to "hold on tight." As Plaintiff left, Defendant Sanders followed him. According to Plaintiff, Defendant Sanders kicked him off his bicycle, threw him to the ground, choked him, and stomped on his foot. (ECF No. 34-3, PageID.313.) He was able to break loose, but after a chase, Defendants were able to stop Plaintiff and place him in handcuffs. Plaintiff testified that he was pushed and his foot kicked as he was getting into the police car. (*Id.* at PageID.317-19.)

As Plaintiff was taken to the police car in handcuffs, he told Defendants that his leg hurt. After being booked at the police station and indicating his leg may be broken,

emergency personnel were called and he was transported to Beaumont Hospital, where it was revealed that there was a fracture in his foot. (ECF No. 34-27.)

Plaintiff was charged with resisting a police officer in violation of a local ordinance, but the charge was ultimately dismissed by the prosecuting attorney. An internal investigation concluded that Defendant Sanders did not have a legal basis to detain Plaintiff. (ECF No. 40, PageID.1605, filed under seal.) The investigation further noted that Plaintiff sustained an injury and Defendant Sanders "failed to document a factual account of the events that took place in his police report." (*Id.*)

## II. Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues

3

sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

## III.   Analysis

Defendants assert a defense of qualified immunity. Plaintiff argues that genuine issues of material fact preclude summary judgment.

### A.   Qualified Immunity Standard

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (internal quotation marks and citation omitted). Qualified immunity is a threshold question the Court is required to rule on "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). When a government official raises a defense of qualified immunity, the plaintiff bears the burden of proving that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Court undertakes a two-step analysis when determining whether a government official is entitled to qualified immunity. The first inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

**B.  Unlawful Arrest**

Plaintiff argues that Defendants had no legal basis to detain or arrest him. Defendants argue there was reasonable suspicion to make an investigatory stop due to the lack of a headlamp on Plaintiff's bicycle,[3] and when Plaintiff refused to acquiesce to Defendant Sanders' legal authority, there was probable cause that he committed the offense of failure to obey a lawful order.

To establish a wrongful arrest claim, Plaintiff must show that Defendants lacked probable cause to make the arrest. *See Crockett v. Cumberland College*, 316 F.3d 571, 579-80 (6th Cir. 2003). For a police officer to have probable cause, "there must be facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Id.* at 580 (internal quotation marks and citation omitted). "The probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest*." *Id.* Under what is known as a *Terry* stop, the police may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*,

---

[3] Defendants initially argued that the stop was also justified because Plaintiff appeared lost and intoxicated, entered a White Castle on his bike despite Defendant Sanders giving him directions, and was riding along a busy roadway. Defendants also stated that Defendant Sanders had at some point in his career investigated a robbery that occurred at a restaurant by someone on a bike. In their reply, Defendants focus primarily on the lack of a headlamp.

5

528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Even though "'reasonable suspicion' is a less demanding standard than probable cause," it requires "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Id.* at 123-24 (quoting *Terry*, 392 U.S. at 27). In fact, an "individual has a right to ignore the police and go about his business" when approached by an officer. *See Wardlow*, 528 U.S. at 125. Generally, "[i]n the § 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible." *See Crockett*, 316 F.3d at 581 (citation omitted).

The question here is not whether Plaintiff's bicycle had a headlamp but whether there were facts and circumstances within Defendant Sanders' knowledge that are sufficient to warrant a belief that Plaintiff had committed the civil infraction. To the extent Defendant Sanders' testimony can be construed as stating he observed the lack of a head lamp,[4] accepting such testimony is a credibility determination that should be left to the jury. Moreover, Defendant Sanders did not document this reason in his report. There is no allegation that this in and of itself is a constitutional violation, but the lack of documentation is relevant to Defendants Sanders' credibility. And if a jury finds there was no reasonable suspicion to conduct the initial stop, then there was no probable cause for the offense of refusing to obey a lawful order or resisting and opposing. *See Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 137 (6th Cir. 2003) ("Officers cannot arrest

---

[4] Defendants state that Defendant Sanders testified that he did not observe a headlamp; the cited testimony is as follows:

   Q. Okay. Do you recall if the bike had a headlamp on it?
   A. I don't recall, no.

ECF No. 34-2, PageID.283.

someone for exercising [his] right to resist an unlawful restraint."); *see also People v. Moreno*, 814 N.W.2d 624, 625 (Mich. 2012) (reaffirming the right to resist an unlawful arrest as a defense to a charge of resisting and obstructing a police officer). Thus, a reasonable jury could conclude that Plaintiff was stopped without reasonable suspicion and arrested without probable cause in violation of his Fourth Amendment rights. Because *Terry*, which requires reasonable suspicion for investigative detentions, was decided by the Supreme Court in 1968, the Court finds that the rights at issue here were clearly established at the time of the incident. *See Feathers v. Aey*, 319 F.3d 843, 850 (6th Cir. 2003). Thus, Plaintiff's unlawful arrest claim survives this motion.

### C. Excessive Force

Plaintiff also alleges excessive force. His unlawful arrest and excessive force claims were pled as one count in the complaint. In some cases, "an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, [and] the excessive force claim is entirely derivate of, and is subsumed within, the unlawful arrest claim." *See Derowitsch v. Granger*, 783 F. App'x 979, 984 (11th Cir. 2019). But here, in addition to the lack of probable cause, Plaintiff makes allegations regarding being knocked off his bicycle, choked, stomped on, injured, and later pushed and kicked while in handcuffs. Thus, the Court will address these aspects of his claim separately.[5]

A claim stemming from an officer's alleged use of excessive force during an arrest or other seizure of a free citizen is governed by the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Applying this standard "requires

---

[5] This analysis will become relevant in the event there is a finding that the stop and arrest were lawful.

7

a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations and citations omitted). In making this determination, courts consider "the totality of the circumstances," including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* This inquiry is undertaken from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. In other words, courts must keep in mind "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. But ultimately the reasonableness inquiry is an objective one: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

The severity of the offense at issue here weighs heavily in favor of Plaintiff. Even if the stop is found to be lawful, the investigation was only with regards to a civil infraction. And because there is no evidence that Plaintiff posed an immediate threat to the safety of the officers or others, the second *Graham* factor also weighs in favor of Plaintiff. And while Plaintiff was attempting to evade the officers by flight, Plaintiff testified that Defendant Sanders kicked him off his bicycle, threw him to the ground, choked him, and stomped on his foot.[6] (ECF No. 34-3, PageID.313.) The type of force that has been found

---

[6] Defendants dispute Plaintiff's characterization of the events. But the video evidence does not conclusively disprove his testimony. And the Court must construe the record in the light most favorable to Plaintiff on a motion for summary judgment.

reasonable to subdue a suspect who is actively resisting arrest is the use of a taser or a knee strike. *See Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015). The level of force here goes well beyond that and may be found objectively unreasonable in light of the totality of the circumstances. Plaintiff also testified that he was pushed and kicked after he was placed in handcuffs. *See* ECF No. 34-3, PageID.317-19; *see also Bultema v. Benzie Cty.*, 146 F. App'x 28, 35 (6th Cir. 2005) (citing *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)) (noting "that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional"). In sum, a reasonable jury could find that Defendants violated Plaintiff's right to be free from excessive force.

Finally, the Court finds that the constitutional rights at issue were clearly established. "Even in a case where the subject may be giving some resistance [to officers], it is clearly established that, where the subject no longer poses a threat, officers are not entitled to choke and repeatedly strike the subject." *Grinnell v. City of Taylor*, No. 17-11354, 2021 U.S. Dist. LEXIS 83789, at *38-39 (E.D. Mich. May 3, 2021) (citing Sixth Circuit cases). And "[i]t is well established that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Bultema*, 146 F. App'x at 35 (citing *McDowell*, 863 F.2d at 1307). The Court therefore denies Defendants' request for qualified immunity on Plaintiff's excessive force claim.

### D. Deliberate Indifference

Plaintiff alleges that the two-hour delay in seeking medical care for his broken foot constitutes a violation of his constitutional rights and that emergency personnel should have been summoned to the scene. Defendants argue that there is no evidence that they intentionally delayed medical care.

Pretrial detainees have a right under the Fourteenth Amendment's due process clause to adequate medical treatment similar to the right of prisoners under the Eighth Amendment. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). To sustain a constitutional claim for the denial or delay of medical treatment, a plaintiff must establish that the defendants acted with "deliberate indifference to serious medical needs." *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). This analysis has two components. "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). The subjective component requires "facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, and that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 703 (citing *Farmer*, 511 U.S. at 837).

Defendants dispute both prongs of the inquiry. As a general matter, a broken foot may be deemed a serious injury for purposes of a deliberate indifference claim,[7] *see, e.g.*, *Allen v. Blackwelder*, No. 4:15-CV-44-HSM-CHS, 2017 U.S. Dist. LEXIS 40080, at *4 (E.D. Tenn. Mar. 21, 2017), but the Sixth Circuit has found a broken hand not "so serious that a two-hour delay in receiving a splint is unreasonable," *Hubbard v. Gross*, 199 F. App'x 433, 438 (6th Cir. 2006). Moreover, there is no evidence in the record from which

---

[7] Defendants argue that Plaintiff must provide verifying medical evidence to establish that the delay in treatment had a detrimental effect on his medical condition. But this requirement appears to apply only when it is alleged that the delay itself resulted in the serious medical condition, *see Jackson v. Gibson*, 779 F. App'x 343, 346 (6th Cir. 2019), or in cases "involving minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004).

"a sufficiently culpable state of mind" can be inferred. *See Blackmore*, 390 F.3d at 895 (internal quotation marks and citation omitted). Plaintiff told Defendants that his leg hurt as he was being taken to the police car, but there is no evidence that they were aware of the severity of that injury especially since Plaintiff was admittedly able to run away from officers and hop a fence just a few minutes prior. *See* ECF No. 34-3, PageID.317; *see also Pond v. Haas*, 674 F. App'x 466, 470 (6th Cir. 2016) (dismissing a deliberate indifference claim against the prison official who was responsible for the delay in scheduling a surgery for the plaintiff's broken arm because there was no evidence he was aware of the severity of the injury). In sum, the Court does not find there is a genuine issue of material fact as to whether Defendants acted with deliberate indifference to a serious medical need, and this claim is dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is DENIED IN PART AND GRANTED IN PART. Plaintiff's unlawful arrest and excessive force claims against Defendant Officers Sanders, Najor, Hoye, and Vert survive this motion. The Court will terminate the City of Dearborn (and the Dearborn Police Department) and Defendant Officer Walker from this matter pursuant to Plaintiff's stipulation.

SO ORDERED.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: September 28, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2023, by electronic and/or ordinary mail.

          <u>s/Lisa Bartlett</u>
          Case Manager